

| | FILED | ✗ LODGED |
| --- | --- | --- |
| | RECEIVED | COPY |

MAR 0 9 2020

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___SMH___ DEPUTY

| ✓ FILED | LODGED |
| --- | --- |
| RECEIVED | COPY |

AUG 2 7 2020

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___RY___ DEPUTY

1  MICHAEL BAILEY
   United States Attorney
2  District of Arizona
   M. BRIDGET MINDER
3  Assistant U.S. Attorney
   Arizona State Bar No. 023356
4  PETER SEXTON
   Assistant U.S. Attorney
5  Arizona State Bar No. 011089
   Two Renaissance Square
6  40 N. Central Ave., Suite 1800
   Phoenix, Arizona 85004
7  Telephone: 602-514-7500
   Email: mary.minder@usdoj.gov
8  Email: peter.sexton@usdoj.gov
   Attorneys for Plaintiff
9

10              IN THE UNITED STATES DISTRICT COURT

11                 FOR THE DISTRICT OF ARIZONA

12  United States of America,                   CR-20-00225-01-PHX-MTL

13                     Plaintiff,
                                                   PLEA AGREEMENT
14         vs.

15
    UCXtra Umbrella, LLC,
16
                       Defendant.
17

18         Plaintiff, United States of America, and the defendant, UCXtra Umbrella, LLC

19  ("UCXtra"), hereby agree to dispose of this matter on the following terms and conditions:

20  1.     **PLEA**

21         The defendant will plead guilty to a two-count Information charging the defendant

22  with violations of 18 United States Code (U.S.C.) § 1347, Health Care Fraud (Count One),

23  and 18 U.S.C. § 1957, Engaging in Monetary Transactions in Property Derived from

24  Specified Unlawful Activity (Count Two); both counts are Class C felony offenses.

25  2.     **MAXIMUM PENALTIES**

26         a.     A violation of 18 U.S.C. § 1347 is punishable by a maximum fine of

27  $250,000 or twice the gross pecuniary gain or loss (18 U.S.C. § 3571(d)), a maximum term

28  of imprisonment of ten years, or both, and a term of supervised release of three years. A



⑨

SCANNED
SMH

violation of 18 U.S.C. § 1957 is punishable by a maximum fine of $250,000 or twice the amount of criminally derived property involved in the transaction (18 U.S.C. § 1957(b)(2)), a maximum term of imprisonment of ten years, or both, and a term of supervised release of three years. A maximum term of probation is five years.

b.     According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1)     make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2)     pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3)     serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4)     pay upon conviction a $400 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

c.     The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

3.     **AGREEMENTS REGARDING SENTENCING**

a.     Restitution. Pursuant to 18 U.S.C. § 3663 and/or 3663A, the defendant specifically agrees to pay restitution of $12,500,000 to all victims directly or proximately harmed by the defendant's "relevant conduct," including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. The defendant understands that such restitution will be included in the Court's Order of

1   Judgment and that an unanticipated restitution amount will not serve as grounds to
2   withdraw the defendant's guilty plea or to withdraw from this plea agreement. The
3   defendant agrees that such restitution shall be paid within one year of sentencing.

4       b.   Medical License. Dr. Jeffrey Sawyer and Dr. Douglas Hobbs both represent
5   that they do not have active licenses to practice medicine, both having let their Arizona
6   medical licenses expire. Dr. Sawyer and Dr. Hobbs agree that they will not seek an active
7   license to practice medicine in any jurisdiction for a period of five years from the
8   sentencing in this matter.

9       c.   Debarment. UCXtra, Dr. Jeffrey Sawyer, and Dr. Douglas Hobbs agree to
10  be permanently excluded, directly or indirectly as a provider for any "health care benefit
11  program" as described and defined in 18 U.S.C. § 24(b).

12      d.   Assets and Financial Responsibility. The defendant shall make a full
13  accounting of all assets in which the defendant has any legal or equitable interest. The
14  defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or
15  transfer any such assets or property before sentencing, without the prior approval of the
16  United States (provided, however, that no prior approval will be required for routine, day-
17  to-day expenditures). The defendant also expressly authorizes the United States Attorney's
18  Office to immediately obtain a credit report as to the defendant in order to evaluate the
19  defendant's ability to satisfy any financial obligation imposed by the Court. The defendant
20  also shall make full disclosure of all current and projected assets to the U.S. Probation
21  Office immediately and prior to the termination of the defendant's supervised release or
22  probation, such disclosures to be shared with the U.S. Attorney's Office, including the
23  Financial Litigation Unit, for any purpose.

24      e.   Acceptance of Responsibility. If the defendant makes full and complete
25  disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's
26  commission of the offense, and if the defendant demonstrates an acceptance of
27  responsibility for this offense up to and including the time of sentencing, the United States
28  will recommend a two-level reduction in the applicable Sentencing Guidelines offense

- 3 -

level pursuant to U.S.S.G. § 3E1.1(a).  If the defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

**4.    AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

a.    This office shall not prosecute the defendant UCXtra Umbrella, LLC; Dr. Jeffrey Sawyer; or Dr. Douglas Hobbs for any offenses reflected in the investigation by the United States, which resulted in the charges in the Information.

b.    This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**5.    COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a.    If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b.    If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated.  In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings.  The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

**6.    WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or

- 4 -

1   motion that challenges the conviction, an order of restitution or forfeiture, the entry of

2   judgment against the defendant, or any aspect of the defendant's sentence, including the

3   manner in which the sentence is determined, including but not limited to any appeals under

4   18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255

5   (habeas petitions), and any right to file a motion for modification of sentence, including

6   under 18 U.S.C. § 3582(c).  This waiver shall result in the dismissal of any appeal,

7   collateral attack, or other motion the defendant might file challenging the conviction, order

8   of restitution or forfeiture, or sentence in this case.  This waiver shall not be construed to

9   bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial

10  misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

11  **7.    DISCLOSURE OF INFORMATION**

12      a.    The United States retains the unrestricted right to provide information and

13  make any and all statements it deems appropriate to the U.S. Probation Office and to the

14  Court in connection with the case.

15      b.    Any information, statements, documents, and evidence that the defendant

16  provides to the United States pursuant to this agreement may be used against the defendant

17  at any time.

18      c.    The defendant shall cooperate fully with the U.S. Probation Office.  Such

19  cooperation shall include providing complete and truthful responses to questions posed by

20  the U.S. Probation Office including, but not limited to, questions relating to:

21      (1)    criminal convictions; and

22      (2)    financial information, including present financial assets or liabilities

23  that relate to the ability of the defendant to pay a fine or restitution.

24  **8.    FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

25      a.    Except as specifically provided in the following paragraph (8.b), nothing in

26  this agreement shall be construed to protect the defendant from administrative or civil

27  forfeiture proceedings or prohibit the United States from proceeding with and/or initiating

28  an action for civil forfeiture.  Pursuant to 18 U.S.C. § 3613, all monetary penalties,

1  including restitution imposed by the Court, shall be due immediately upon judgment, shall
2  be subject to immediate enforcement by the United States, and shall be submitted to the
3  Treasury Offset Program so that any federal payment or transfer of returned property the
4  defendant receives may be offset and applied to federal debts (which offset will not affect
5  the periodic payment schedule). If the Court imposes a schedule of payments, the schedule
6  of payments shall be merely a schedule of minimum payments and shall not be a limitation
7  on the methods available to the United States to enforce the judgment.

8       b.      Provided that the defendant pays full restitution within one year of sentencing
9  as agreed in paragraph 3.a of this plea agreement, no forfeiture action arising from the
10  offenses reflected in the investigation by the United States, which resulted in the charges
11  in the Information, will be sought by the District of Arizona against the defendant UCXtra
12  Umbrella, LLC; Dr. Jeffrey Sawyer; Dr. Douglas Hobbs; or any other entity in which they
13  have an ownership interest.

14  **9.**      **ELEMENTS**

15              **Health Care Fraud, 18 U.S.C. § 1347**

16       1.      The defendant knowingly and willfully executed or attempted to execute a
17  scheme or artifice to defraud any health care benefit program or to obtain by means of false
18  or fraudulent pretenses, representations, or promises, any of the money or property owned
19  by, or under the custody or control of any health care benefit program;

20       2.      The statements made or facts omitted as part of the scheme were material;
21  that is, they had a natural tendency to influence, or were capable of influencing, a person
22  or entity to part with money or property;

23       3.      The defendant acted with the intent to defraud; that is, the intent to deceive
24  or cheat;

25       4.      The scheme was in connection with the delivery of or payment for health
26  care benefits, items, or services; and

27       5.      The scheme defrauded a health care benefit program as defined in 18 U.S.C.
28  § 24(b).

- 6 -

**Engaging in Monetary Transactions in Property
Derived From Specified Unlawful Activity, 18 U.S.C. § 1957**

1. The defendant knowingly engaged or attempted to engage in a monetary transaction;

2. The defendant knew the transaction involved criminally derived property;

3. The property had a value greater than $10,000;

4. The property was, in fact, derived from health care fraud in violation of 18 U.S.C. § 1347; and

5. The transaction occurred in the United States.

**10.   FACTUAL BASIS**

The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

UCXtra Umbrella, LLC ("UCXtra"), is an Arizona corporation that, by 2016, owned and was operating a network of 33 urgent care clinics in Arizona, primarily in the greater Phoenix and Tucson areas, doing business under the name Urgent Care Extra. From 2012 through 2016, more than one million patient visits occurred at UCXtra clinics in Arizona. UCXtra accepted and billed a broad range of private and public health insurance plans for its services; the majority of UCXtra's patient visits were billed to private health insurance companies.

UCXtra intentionally created patient care practices and billing procedures that caused UCXtra providers and staff to overstate the complexity of the medical services provided to patients and claim falsely inflated reimbursement rates from health care benefit programs. UCXtra encouraged providers and staff to order tests and procedures that may not have been medically necessary to justify higher billing codes and obtain higher reimbursement rates. Knowing Medicare was more likely to audit the claims and detect the fraud, UCXtra targeted private health insurance companies for higher reimbursement claims.

In 2017, UCXtra engaged experts to conduct an audit of UCXtra's medical and billing records. The 2017 audit showed UCXtra's fraudulent practices caused health insurance companies to overpay UCXtra approximately $10,239,954 for services UCXtra provided in Arizona between 2012 and 2016. The 2017 audit did not account for systemic misrepresentations in UCXtra's medical records, which were intentionally designed to overstate the complexity of the medical services provided to patients and further inflate the reimbursement rates. Although it is difficult to determine the precise amount by which UCXtra's fraudulently-designed medical records further inflated the reimbursements received by UCXtra, UCXtra estimates it is at least twenty percent. Therefore, a reasonable estimate of the loss caused by UCXtra's health care fraud scheme in Arizona is approximately $12,500,000.

## COUNT ONE

From at least as early as February 2009 and continuing through at least October 2016, in the District of Arizona, UCXtra knowingly and willfully executed and attempted to execute the above-described scheme and artifice to defraud and to obtain by means of materially false and fraudulent pretenses, representations and promises, money and property owned by and under the custody and control of health care benefit programs as defined in 18 U.S.C. § 24(b), in connection with the delivery of and payment for health care benefits, items, and services, all in violation of 18 U.S.C. § 1347.

## COUNT TWO

On or about October 31, 2016, in the District of Arizona, UCXtra knowingly engaged and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the transfer of U.S. currency, funds, and monetary instruments in the amount of $300,000 from Chase account ending -6780 to J.P. Morgan account ending -0918, such property having been derived from a specified unlawful activity, that is health care fraud (18 U.S.C. § 1347), all in violation of 18 U.S.C. § 1957.

The defendant, through its authorized representative, shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I am authorized to enter into this plea agreement on behalf of the defendant, UCXtra Umbrella, LLC, and to enter a plea of guilty on behalf of the defendant.

I have read the entire plea agreement.  I understand each of its provisions and I voluntarily agree to it on behalf of the defendant.

I understand that by entering a plea of guilty I shall waive the defendant's rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in its defense, to remain silent and refuse to be a witness against itself by asserting its privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter this guilty plea as indicated above on the terms and conditions set forth in this agreement.

I understand the nature of the charges to which the defendant is entering a guilty plea.  I further understand the nature and range of the possible sentence and that the defendant's ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

The defendant's guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement.  The defendant voluntarily agrees to the provisions of this agreement and agrees to be bound according to its provisions.

I understand that if the defendant is granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time.  I further understand that if the defendant violates any

1    of the conditions of its probation/supervised release, its probation/supervised release may

2    be revoked and upon such revocation, notwithstanding any other provision of this

3    agreement, its sentence otherwise may be altered.

4        This written plea agreement, and any written addenda filed as attachments to this

5    plea agreement, contain all the terms and conditions of the plea.   Any additional

6    agreements, if any such agreements exist, shall be recorded in a separate document and

7    may be filed with the Court under seal; accordingly, additional agreements, if any, may not

8    be in the public record.

9        I further agree on behalf of the defendant that promises, including any predictions

10   as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply,

11   made by anyone (including the defendant's attorney) that are not contained within this

12   written plea agreement, are null and void and have no force and effect.

13       I fully understand the terms and conditions of this plea agreement.  I am not now

14   using or under the influence of any drug, medication, liquor, or other intoxicant or

15   depressant that would impair my ability to fully understand the terms and conditions of this

16   plea agreement.

17

18   _2/11/2020_

19   Date

         Edward F. Novak
20       Authorized Representative of Defendant Urgent
         Care Extra LLC
21

22              **APPROVAL OF DEFENSE COUNSEL**

23       I have discussed this case and the plea agreement with my client in detail and have

24   advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the

25   constitutional and other rights of an accused, the factual basis for and the nature of the

26   offense to which the guilty plea will be entered, possible defenses, and the consequences

27   of the guilty plea including the maximum statutory sentence possible.  I have further

28   discussed the concept of the advisory Sentencing Guidelines with the defendant.  No

                              - 10 -

assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

_2/11/2020_
_____
Date

_____
Edward F. Novak
Melissa S. Ho
Attorneys for Defendant Urgent Care Extra LLC

## ACKNOWLEDGEMENT BY THIRD PARTIES

Although this agreement is between the United States and Urgent Care Extra LLC, Dr. Jeffrey Sawyer and Dr. Douglas Hobbs receive certain benefits and also have certain obligations as specified in this agreement. Accordingly, Dr. Sawyer and Dr. Hobbs expressly acknowledge the following:

Drs. Sawyer and Hobbs have read the entire agreement with the assistance of their attorneys. They have discussed this agreement, the case, and their constitutional and other rights with their attorneys. They are satisfied that their attorneys have represented them in a competent manner. They fully understand the terms and conditions of this agreement. They voluntarily acknowledge the entire agreement and they voluntarily agree to the specific provisions of the agreement that benefit and bind them. Their acknowledgement of this agreement, and the benefits and obligations specific to each of them, is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. This written agreement contains all the terms and conditions of the agreement.

_2/8/20_
_____
Date

_____
Dr. Jeffrey Sawyer

- 11 -

1

2   Date                                    Edward F. Novak
                                            Melissa S. Ho
3                                           Attorneys for Dr. Jeffrey Sawyer

4

5   Date                                    Dr. Douglas Hobbs

6

7

8   Date                                    Ronald Chapman
                                            Attorney for Dr. Douglas Hobbs
9

10

11              **APPROVAL OF THE UNITED STATES**

12          I have reviewed this matter and the plea agreement.  I agree on behalf of the United

13   States that the terms and conditions set forth herein are appropriate and are in the best

14   interests of justice.

15                                           MICHAEL BAILEY
                                            United States Attorney
16                                          District of Arizona

17

18   Date

19                                          M. BRIDGET MINDER
                                            PETER SEXTON
20                                          Assistant U.S. Attorney

21

22              **ACCEPTANCE BY THE COURT**

23

24   Date

25                                          HONORABLE
                                            United States District Judge
26

27

28

- 12 -

## CONSENT IN LIEU OF A
## SPECIAL MEETING OF THE
## MEMBER OF
## UCXTRA UMBRELLA LLC

### February 3, 2020

The undersigned, being the managers (the "**Managers**") of UCXtra Umbrella

LLC, an Arizona limited liability company (the "**Company**"), does hereby waive any and

all requirements for calling, giving notice of, and holding a special meeting of the

Member, and, in lieu of a special meeting, consents that the resolutions hereinafter set

forth are adopted and shall have the same force and effect as if adopted at a formal

special meeting of the Managers, duly called and held for the purposes of acting upon

proposals to adopt the following resolutions:

**BE IT RESOLVED**, after due consideration, the Managers deems it advisable, and in the best interest of the Company, that counsel for the Company, Edward F. Novak ("**Counsel**"), has the authority to execute the Plea Agreement dated on or about February _11_, 2020, in case number _____ (the "**Plea Agreement**") and to execute the Statement of Admissions presented to the Managers and attached hereto as Exhibit "A";

**RESOLVED FURTHER**, that Counsel may represent the Company at all court proceedings associated with the entry of the Plea Agreement, the entry of a judgment of guilt and sentencing;

**RESOLVED FURTHER,** that any and all actions heretofore taken by Counsel, with respect to any of the foregoing matters be, and each of them hereby is, approved, ratified, and confirmed;

**RESOLVED FURTHER,** that Counsel be, and hereby is, authorized, for and on behalf of the Company, to execute any and all documents and do any and all things and take any and all steps deemed by him necessary or appropriate to carry out the purposes of the foregoing resolutions and the transactions contemplated thereby;

**RESOLVED FURTHER**, that the authority granted herein shall remain in full force and effect until such time as further resolutions revoking such authority are received by the parties relying hereon;

**RESOLVED FURTHER**, that this Consent may be executed in several counterparts, each of which shall be fully effective as an original and all of which together shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent to be effective as of the date first written above.

**MANAGERS:**

TREADSTONE MANAGEMENT, LLC
The LJ Sawyer Family Trust, dated December 1, 2012, Manager

Dated:   2-8-20   JEFFRY STAR SAWYER, Managing Trustee

SECURE MANAGEMENT, LLC
THE 1ST TRUST, dated August 1, 2006, Manager

Dated:   2-8-20   DOUGLAS D. HOBBS, Managing Trustee

47908074.1